No. 44,443

THOMAS SCOTT MUHN, a minor, by and through Richard T. Muhn and Eleanor S. Muhn, Father and Mother, Natural Guardians and Next Friends, and ANN E. BRAZELTON, a minor, by and through Leslie F. Brazelton and Patricia Brazelton, Father and Mother, Natural Guardians and Next Friends, *Appellee*, v. KERIN L. SCHELL, *Appellant*.

(413 P. 2d 997)

Opinion filed May 7, 1966.

*Gerald Sawatzky,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger, Benjamin C. Langel* and *Phillip S. Frick,* all of Wichita, were with him on the briefs for the appellant.

*Orval L. Fisher,* of Wichita, argued the cause, and *Gerald L. Michaud, Russell Cranmer* and *M. William Syrios,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal by the operator of an automobile from a judgment in favor of two injured guests. The judgment is challenged for insufficiency of the evidence and impropriety of the instructions on the question of "gross and wanton negligence."

The facts which tend to support the verdict in favor of plaintiffs, most of which are not in dispute, will be first stated.

The defendant, Kerin L. Schell, was a Kansas University student, nineteen years of age. On the evening of April 2, 1962, Kerin was taking his sister, Bonnie, to court to cover a traffic violation. Kerin and Bonnie had a mutual friend, Ann Brazelton, the plaintiff. Bonnie and Ann had met while attending Southeast High School. Bonnie had introduced Kerin to Ann and they had had several dates.

On the way from their home at South Crestway, Wichita, Kansas, to the traffic court, Kerin and Bonnie stopped at Ann's home, 8114 Morningside Drive, Wichita, to take her with them. The plaintiff, Thomas Scott Muhn, from Boulder, Colorado, was visiting Ann at the time. Thomas was seventeen years of age and had arrived a day or two before. Ann was faced with a teenager's dilemma—she did not want to appear to be dating Kerin while Thomas was there. She solved the problem by informing Kerin that she would sit in the back seat with Bonnie and Kerin and Thomas would sit in the front seat. Under this seating arrangement they drove west on Morningside, south on Rock Road and then west on Kellogg Street.

Ann complained of the manner in which Kerin was driving. As he was approaching Hydraulic Street on Kellogg in the right lane, he pulled into the left lane, passed a car, pulled back into the right lane and stopped immediately behind a car already stopped at the intersection.

Ann asked Kerin to slow down and "quit goofing off." Ann testified:

"Q. Would you then describe the manner in which he drove from that point up to Pattie Street—the street immediately before the Kellogg overpass?

"A. He drove in the same manner—in the same manner he had been, what I would call irrational, weaving in and out of traffic and pulling up sharply at a stop sign and stopping suddenly.

"Q. Did you say anything at the stop sign at the intersection of Kellogg and Pattie Streets after he pulled up there?

"A. Yes, I asked him to slow down and be careful."

The party was now approaching the Emporia Avenue exit from the Kellogg overpass at about 7:23 p. m. The traffic was fairly heavy. The lights on the overpass clearly illuminated it and the Emporia Avenue exit. The speed limit into the exit was twenty miles per hour.

The speedometer showed that Kerin was driving at about 45 miles per hour. Shortly before he reached the Emporia Avenue

exit he accelerated his speed and passed another car. He then attempted to pass in front of the car and turn right into the Emporia Avenue exit. He missed the exit and struck the cement divider between the exit and Kellogg Street. The turn into the exit was not abrupt but proceeded on a northwest angle.

Ann and Thomas were injured. They brought separate damage actions against Kerin L. Schell, the driver of the car. The actions were consolidated for trial. The jury returned a verdict in favor of Ann E. Brazelton for $1,088.10 and in favor of Thomas Scott Muhn for $13,214.32. The defendant has appealed.

The appellant first contends that the trial court erred in overruling his motions for directed verdicts because there was no creditable evidence from which the jury could find gross and wanton negligence which is a necessary element to the creation of liability under the guest statute.

We are forced to conclude otherwise. It is not contended that the plaintiffs were not guests. Both parties proceed on that assumption. Therefore, the rights of the parties are controlled by the provisions of K. S. A. 8-122b, which provides:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

This court has had numerous occasions to consider and apply the phrase "gross and wanton negligence" as used in the statute. In the recent case of *Saunders v. Shaver*, 190 Kan. 699, 378 P. 2d 70, our conclusions are summed up as follows:

". . . A wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result. A few of our most recent cases supporting the mentioned rules of law are *MacDougall v. Walthall*, 174 Kan. 663, 257 P. 2d 1107; *Elliott v. McKenzie*, 180 Kan. 344, 304 P. 2d 550; *Hickert v. Wright*, 182 Kan. 100, 104, 105, 319 P. 2d 152; *Dirks v. Gates*, 182 Kan. 581, 589, 322 P. 2d 750; *Hanson v. Swain*, 172 Kan. 105, 109, 238 P. 2d 517, and the many cases cited and reviewed in the mentioned authorities." (p. 701.)

As this state does not recognize degrees of negligence, this court, in considering liability for injury to a guest, has come to lean

heavily on the word "wanton" and requires a showing of "wantonness" on the part of the host to sustain recovery.

Perhaps the mental attitude of the wrongdoer, rather than particular negligent acts, tends to establish wantonness. It would appear that at least two attitudes must be present. There must be realization of imminent danger and reckless disregard, indifference and unconcern for probable consequences. Therefore, whether the necessary elements are present to constitute wantonness must of necessity depend on the facts and circumstances of each particular case.

Under the facts and circumstances of this case it cannot be said as a matter of law that the defendant was not guilty of wanton negligence. The jury, in finding wantonness, had a right to consider the possible irritation of the defendant because of the presence of Thomas and the seating arrangement. The defendant's continued "goofing off" after being warned by his young friend, and his passing a car and abruptly turning in front of it to exit at Emporia Avenue, after having made dangerous and irrational approaches at other intersections, presented a question of fact as to the wantonness of his conduct.

The appellant next complains of the court's instruction which read:

"In these cases the plaintiffs Thomas Scott Muhn, and Ann E. Brazelton Stanton, claim they were injured and sustained damage as a result of the gross and wanton negligence of the defendant Kerin L. Schell in one or more of the following respects:

"1. Making an improper right turn;

"2. Turning abruptly across the path of another car in attempting to enter the Emporia Street exit;

"3. In exceeding the speed limit;

"4. In attempting to enter the Emporia Street exit when the car was not under control.

"The plaintiffs claim that one or more of the foregoing was the direct cause of their injuries and damages.

"The burden of proof is upon the plaintiffs to prove that the defendant was grossly and wantonly negligent in one or more of the particulars alleged; that the defendant's gross and wanton negligence was a direct cause of the injuries and damages; that the nature, and extent and consequences of the injuries entitled the plaintiffs to an award of damages."

The appellant makes no objection to the court's instruction defining wantonness but contends:

"The second paragraph of instruction No. 2 tells the jury that they may find wantonness in the commsision of any one of the four enumerated acts.

This means, for example, that exceeding the speed limit by itself could be wantonness. Such is not the law of Kansas. Speed alone does not constitute wantonness. *Tuminello v. Lawson*, 186 Kan. 721, 723, 352 P. 2d 1057 (1960); *Perry v. Schmitt*, 184 Kan. 758, 763, 339 P. 2d 36 (1959)."

The appellant misconstrues the trial court's instruction and this court's decisions. While speed alone might not constitute wantonness, excessive speed if carried on under such conditions and circumstances as to "indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences," would constitute wantonness. It may be said that any wrongful act, including an improper right turn, carried on under such conditions and circumstances would constitute wanton negligence. Again, it is the mental attitude indicated rather than a particular act that constitutes wantonness.

We find no merit in the objection made to the instruction.

The appellant contends that it should have been granted judgment on the answer to the special interrogatory notwithstanding the general verdict for the reason the answer affirmatively acquitted him of gross and wanton negligence as a matter of law.

The jury was interrogated and gave answer as follows:

"If you find for the plaintiffs, then state the conduct of the defendant which you find to be gross and wanton negligence which was the direct cause of the injuries and damages to the plaintiffs.

"Answer: 1. Making an improper right turn."

The appellant suggests that it is axiomatic in Kansas that a special finding that a defendant committed a certain act or acts exonerates him from all other acts charged. There is a place for the application of the rule (*Jones v. A., T. & S. F. Rly. Co.*, 148 Kan. 686, 85 P. 2d 15). However, we do not believe there is any place for its application here. Perhaps the question asked by the defendant was more objectionable than the answer given.

As has been stated, whether wanton negligence exists depends on the conditions and circumstances of the particular case. Here the jury was asked to state the conduct of defendant which was found to be wanton negligence and which was the direct cause of the injury. The appellant concedes that wantonness consists of a mental attitude not a particular conduct, although mental attitude must come through inference from overt conduct. We are inclined to the opinion that the jury came as near answering the very limited question as it could have under the circumstances. It was not asked for the negligent act or acts which constituted

wantonness. It was asked for the wanton negligence which was the direct cause of the injury. There would have been no injury except for the improper right turn, although other contributing factors tended to infer wantonness.

The appellant contends that the brevity of the instructions allowed the jury not only to determine the facts but also to determine the law. A blanket objection to instructions requires a determination difficult to present in an opinion. We may use the rather threadbare phrase and state that when the instructions are considered as a whole they are found quite sufficient.

The instructions against which the appellant lodges the specific objection of brevity are taken verbatim from the Pattern Instructions for Kansas prepared by the Kansas District Judges Association. Although space will not permit a reproduction of the specific instructions they will be approved by reference.

The instruction as to burden of proof followed PIK 2.10; proximate cause or direct cause followed PIK 5.01B; guest statute and gross and wanton negligence followed PIK 8.85; law of Kansas as to speed followed PIK 8.12 (a), and law of Kansas as to right turn at intersection followed PIK 8.22 (a).

It is no doubt the changes in phrasing in the Pattern Instructions that has caused appellant's criticism. The Pattern Instructions recognize that instructions are for the benefit of laymen on the jury, not the bench and bar. Words and phrases are used which are most readily understood by the laymen. So long as the changed words and phrases tend to clarify the change is not objectionable.

A careful examination of the record discloses no lack of evidence or improper instructions requiring a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J.: Not participating.