No. 45,908

Judy A. Reynolds, by her mother and next friend, Viola Reynolds, *Appellant*, v. Estate of Paul Stanosheck, deceased, *Appellee*.

(482 P. 2d 440)

Opinion filed March 6, 1971.

*Robert F. Galloway,* of Marysville, argued the cause, and *Rowland Edwards,* of Waterville, was with him on the brief for appellant.

*Charles L. Davis, Jr.,* of Topeka, argued the cause, and *Byron M. Gray,* of Topeka, and *Robert E. Ferguson,* of Marysville, were with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This is an appeal from an order of the district court sustaining the defendant-administrator's motion for a directed verdict at the close of the plaintiff's evidence.

The action was commenced by Viola Reynolds, the mother and next friend of Judy A. Reynolds, to recover damages from the estate of Paul Stanosheck, deceased, for personal injuries sustained as a result of an automobile accident in Marysville, Kansas, on November 8, 1964. The decedent was driving his automobile, and was killed in the same accident. We shall refer to the decedent as Paul, or Stanosheck.

Stanosheck was eighteen years of age, and drove his 1958 two-door Oldsmobile sedan to Marysville from his home in Odell, Nebraska, for the purpose of visiting a girl friend. He, along with several other young people ranging in age from fifteen to seventeen, drove to the "Blue Lounge" dance hall about twelve miles west of Marysville on U. S. Highway 36. Paul and his friends returned to

Marysville about midnight. The streets were dry; the weather was cold and it was slightly foggy in Marysville; the car windows were up, and the radio was playing popular music. There were three young people in the front seat besides Paul, and three young people in the back seat, one of whom was Judy Reynolds.

After entering Marysville, Paul turned off of U. S. Highway 36 and proceeded south for two blocks to Elm Street, a residential street, and then proceeded east on Elm. This route was taken by him because there was a curfew in effect, and the driver and the other young people in the automobile were less likely to be seen and stopped by the city police.

Elm Street is an east and west street, and is crossed by the Union Pacific Railroad at Seventh Street—a north and south street. The crossing is not hidden, obstructed, or difficult to see. There is a railroad crossbar sign; the tracks are in plain sight; the terrain is level, and there is nothing to prevent anyone approaching the crossing from looking to the south, or having a clear view in all directions.

As Paul proceeded to cross the tracks, he drove his car into the right front of the diesel engine of a freight train, inflicting damage and causing his death and the death of another, and severely injuring Judy Reynolds who was asleep in the back seat. There was evidence from Janet Wege McKinsey, Paul's date that evening who was seated beside him, that she did not know whether Paul looked to his right when he approached the tracks, but that she was not looking, and was not "watching for a train."

The engineer of the train testified that as the train proceeded through Marysville its headlight was on; the bell was ringing continuously; the whistle was blown at every street crossing, and when the train reached the Elm Street crossing, it was going twelve miles per hour.

It was stipulated that the status of Judy Reynolds, while riding in Stanosheck's automobile, was that of non-paying guest.

A guest of an operator of a motor vehicle does not have a cause of action against his host unless he can show his injury resulted from the "gross and wanton" negligence of the operator. (K. S. A. 8-122b.) Hence, we are concerned only with whether the district court erred in directing a verdict in favor of the appellee for the reason that appellant failed to establish a *prima facie* case of wantonness on the part of Stanosheck.

The test to be followed in evaluating evidence on a motion for a directed verdict is set out in *Fox v. Massey-Ferguson, Inc.*, 206 Kan. 97, 476 P. 2d 646, where, quoting from 3 Vernon's Kansas Statutes Annotated, Code of Civil Procedure [Fowks, Harvey, Thomas], Sec. 60-250.3, p. 219, it was said:

" 'Insofar as standards to be applied by the court are concerned, when a motion for directed verdict is made, the court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion, and to that party give every favorable intendment of the evidence, and a verdict can not be directed unless the evidence is insufficient to sustain a verdict for the non-moving party. See generally, Barron and Holtzoff, Federal Practice and Procedure, § 1975.' " (l. c. 100.)

In directing a verdict for the appellee, the district court concluded there was no evidence to show gross and wanton negligence on the part of Stanosheck upon which reasonable minds could differ, and there was no issue of fact for the jury to determine. We are of the opinion it did not err.

In *Srajer v. Schwartzman*, 164 Kan. 241, 188 P. 2d 971, it was held:

" 'Gross and wanton negligence' within the meaning of such statute means wantonness, or willful and wanton conduct. There must be a realization that danger of injury to another is imminent, and conduct indicating an indifference to whether such injury results." (Syl. ¶ 3.)

In *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 666, 157 P. 2d 822, it was held:

". . . [T]o constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. If the actor has reason to believe his act may injure another, and does it being indifferent to whether it does or not, he is guilty of wanton conduct." (Syl. ¶ 5.)

In *Muhn v. Schell*, 196 Kan. 713, 413 P. 2d 997, it was held:

"The mental attitude of the wrongdoers, rather than the particular negligent act or acts, tends to establish wantonness, and whether the necessary elements are present to constitute wantonness must of necessity depend on the facts and circumstances of each particular case." (Syl. ¶ 2.)

To overcome the requirement of wantonness, the appellant contends that Stanosheck had knowledge of and realized he was approaching a railroad crossing, since he had visited Marysville on numerous occasions prior to the night of the accident, and that this was the danger which is contemplated by the language "realization of the imminence of danger." The appellant claims Stanosheck

should have been aware that the railroad tracks presented an imminent danger of injury. The contention cannot be sustained.

The record convincingly demonstrates that Stanosheck drove his automobile squarely in front of a slowly moving train when the whistle was blowing and the bell was ringing. He was proceeding east slowly, and the train was coming from the south. There was nothing to obstruct his view to the south. The crossing was not a dangerous one—the police chief testified that in 21 years there had not been a previous train-car collision at the crossing. There was no evidence that Stanosheck either heard or saw the train before the crash. As he approached the crossing, he slowed down to less than twenty miles per hour. He had his automobile under control, and he was not dozing, or sleepy. There was evidence he drove safely back to Marysville, and no witness testified otherwise. No one in the car heard or saw the train, or sounded a warning, or realized there was any danger of being hit by the train until a split second before the impact. All persons in the car and who testified at the trial, stated they were moving very slowly—Stanosheck was driving about twenty miles per hour. At no time during the evening did anyone complain of wild, reckless or irresponsible driving. There was no evidence Stanosheck was angry, frustrated, showing off, speeding, had been drinking, or was acting with indifference for the safety of his guests. In short, there is no evidence in the record to indicate he realized the imminence of danger, or upon which a reasonable inference could be based that he possessed an attitude of reckless disregard and complete indifference for the well-being of his close friends. The most that can be said from the evidence in the record is that he failed to keep a proper lookout. He had a duty to look before proceeding over the crossing (*Sander v. Union Pacific Rld. Co.*, 205 Kan. 592, 470 P. 2d 748), and he will be conclusively presumed to have seen what he could and should have seen. (*Mies v. Twietmeyer*, 193 Kan. 97, 99, 392 P. 2d 118.) At most, Stanosheck's failure to keep a proper lookout constituted lack of due care, which is ordinary negligence, and less than gross and wanton conduct.

The judgment of the district court is affirmed.