Dorothy **HAMMER**, Plaintiff-Appellant,

v.

Joyce E. Jordan **STANLEY**, Defendant-Appellee.

No. 73–1288.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 11, 1973.

Decided Dec. 18, 1973.

Howard A. Spies, Topeka, Kan., for plaintiff-appellant.

James E. Benfer, Topeka, Kan. (David L. McLane, Topeka, Kan., on the brief), for defendant-appellee.

Before CLARK,* Associate Justice, LEWIS, Chief Judge, and HILL, Circuit Judge.

HILL, Circuit Judge.

In this diversity action appellant guest passenger sued appellee host driver for injuries sustained in a one-car accident. The jury found appellee grossly and wantonly negligent in operating the car, and awarded appellant $15,500 in damages. After the jury's verdict the trial court sustained appellee's motion for judgment notwithstanding the verdict on the theory that as a matter of law under the Kansas Guest Statute, KSA 8–122b (1964), the evidence did not support a finding that appellee's operation of the automobile constituted gross and wanton negligence.

The judgment, n. o. v. presents a question of law whether there is any evidence tending to prove that appellee possessed such an attitude of reckless disregard and complete indifference to the safety of appellant that it constituted gross and wanton negligence. On this question we must, under the familiar rule, take only the evidence most favorable to appellant and draw the inferences in the light most favorable to her.

The evidence under the above stated rule shows that on the evening of July 26, 1969, appellant Dorothy Hurla Hammer was seriously injured when appellee Joyce Jordan Stanley's automobile swerved into a ditch at the intersection of Jennings Road and Northwest 46th Street in Shawnee County, Kansas. The story unfolds earlier in the evening, however, when approximately twenty teenagers, including Hammer and Stanley, held a party at the home of Stanley's grandparents outside Topeka, Kansas. Intoxicating beverages were present at this party, and apparently Stanley consumed three cans of 3.2 beer, two "cherry vodkas", and possibly one other mixed drink. At approximately 11:00 p. m. Hammer, Stanley and another girl decided to go into town either to get more Cokes or "to get more boys" for the party. Hammer's cousin who was also at the party warned Stanley that she had consumed too many drinks to be driving and offered to take the girls into town. The offer was refused; instead Stanley drove her own car with Hammer and another girl as passengers. Shortly after leaving the party Stanley thought some boys were following them in another car, so she eluded the boys by turning off on Jennings Road. While driving along Jennings Road at approximately 40 m. p. h., which was well within the speed limit, Stanley lighted up a cigarette. While her attention was diverted she apparently missed the sign warning of the "T" intersection ahead. As she approached the end of Jennings Road she also failed to notice the stop sign. Upon finally observing the dead-end she slammed on her brakes but was unable to stop the car before it careened into the ditch on the other side of Northwest 46th Street.

There were no eye witnesses to the accident. Neither Hammer nor the other passenger in Stanley's automobile had any recollection of the events immediately preceding the accident. There was evidence that at the time of the accident Stanley was not wearing her glasses as required by her driver's license. There was also evidence that earlier in the day she had been admonished by a passenger to slow down when she was driving out to the party. Stanley testified she had

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

never been at the intersection of Jennings Road and Northwest 46th Street before, and did not know that Jennings Road was graveled, rough, and of a "washboard effect".

After Hammer's case was presented to the jury, counsel for Stanley moved for a directed verdict. The trial court took the motion under advisement and allowed Stanley to present her case. Upon completion of Stanley's case her counsel again moved for a directed verdict, and again the trial court took it under advisement. As noted previously, after the jury found for Hammer, the trial court took affirmative action and rendered judgment for Stanley notwithstanding the verdict.

Whether the district court erred in granting the judgment n. o. v. depends upon the meaning of gross and wanton negligence under the Kansas Guest Statute. The question of whether Hammer was a guest in Stanley's car was not raised, and thus we narrow our decision to what the Kansas Supreme Court would do if it were determining the gross and wanton negligence question in this case. Kansas Statutes Annotated 8–122b states:

> That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle.

■ There is no paucity of Kansas cases interpreting the phrase "gross and wanton negligence" as used in the guest statute. Some of the reported cases include: Bacon v. Werner, 207 Kan. 26, 484 P.2d 1020 (1971); Reynolds v. Estate of Stanosheck, 206 Kan. 714, 482 P. 2d 440 (1971); Muhn v. Shell, 196 Kan. 713, 413 P.2d 997 (1966); Saunders v. Shaver, 190 Kan. 699, 378 P.2d 70 (1963); MacDougall v. Walthall, 174 Kan. 663, 257 P.2d 1107 (1953); Elliott

v. McKenzie, 180 Kan. 344, 304 P.2d 550 (1956). Probably one of the most cogent definitions of gross and wanton negligence is that found in Saunders v. Shaver, supra:

> A wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result. (378 P.2d at 71–72).

Put another way, the defendant driver's conduct must be such as to indicate that he is willing in injure the passengers in the automobile, or that with a realization of imminent danger he is so indifferent to the consequences as to amount to a willingness to injure. Stout v. Gallemore, 138 Kan. 385, 26 P.2d 573 (1933). To determine whether an act is gross and wanton we must look to the wrongdoer's mental attitude. If he realizes the imminent danger and yet shows reckless disregard, indifference and unconcern for the probable consequences of his acts, he is guilty of gross and wanton conduct. Muhn v. Shell, supra.

Recovery under the Kansas Guest Statute is difficult. For example, in Reynolds v. Estate of Stanosheck, supra, plaintiff's daughter was injured when defendant driver drove his automobile into a train at a railroad crossing. The evidence indicated the train was traveling along the railroad tracks at approximately 12 m. p. h.; the bell was ringing continuously; and the whistle was blown at every railroad crossing. The crossing was not hidden, obstructed or difficult to see. The evidence plainly showed that the defendant was careless in watching for trains and that nothing obstructed his view of the oncoming train. Nevertheless, the Kansas Supreme Court

determined as a matter of law that defendant's failure to observe the train constituted no more than ordinary negligence and thus denied plaintiff recovery under the guest statute.

Another case indicating the difficulty of recovering under the guest statute is Bacon v. Werner, supra. In *Bacon* plaintiff passenger was injured when defendant driver failed to negotiate a curve in the highway. The evidence indicates that plaintiff and defendant spent from 7:00 p. m. to 2:00 a. m. one evening shooting pool and drinking beer. While traveling to another location defendant turned a corner at an excessive rate of speed and lost control of his car. The curve was properly marked with a sign saying "Slow, Dangerous Curve" and there were approximately ten reflector signs on each side of the road indicating the curve. Officers making out the official report described the accident in these terms:

> Vehicle was headed north on Clifton Ave. Failed to reduce speed for curve, went over embankment.

The speed was estimated at approximately 65 miles per hour, and drinking was indicated as an accident factor in the report. The Kansas Supreme Court, in holding for defendant, found that defendant's conduct did not show a willingness to injure plaintiff, nor did it show that defendant realized imminent danger but was so indifferent to the consequences as to constitute a willingness to injure.

In the instant case we cannot find Stanley grossly and wantonly negligent as required under Kansas law. Unquestionably she was careless in driving her vehicle without wearing her eyeglasses and in taking her eyes off the road while lighting a cigarette. Nowhere, however, has there been evidence that she realized imminent danger but was indifferent to the consequences. On the contrary, the uncontroverted evidence shows that Stanley was driving her car well below the speed limit. She did not observe the stop sign at the intersection until it was too late, but when she did notice the stop sign she immediately slammed on her brakes. The uncontroverted testimony is that she was unfamiliar with Jennings Road and thus had no way of knowing that it was graveled, rough, and of a washboard effect. In conclusion, the evidence shows that Stanley failed to keep a proper lookout while approaching the "T" intersection, but there has been no evidence showing her intent to drive recklessly without regard for the safety of her passengers.

We therefore affirm the trial court's decision awarding Stanley judgment notwithstanding the verdict.