KIMBERLY-CLARK CORPORATION, Appellant, v LAKE ERIE WARE-HOUSE, DIV. OF LAKE ERIE ROLLING MILL, INC., et al., Respondents.

Fourth Department, December 5, 1975

*Miles, Cochrane, Grosse & Rossetti (Victor A. Rossetti* of counsel), for appellant.

*Ohlin, Damon, Morey, Sawyer & Moot (George Gibson* and *Brian P. Crosby* of counsel), for respondents.

DEL VECCHIO, J. Plaintiff, a bailor of paper, instituted this action against defendant warehouseman to recover for water damage to paper stored in the latter's warehouse alleged to have been caused by defendant's negligence. In addition to denials of allegations in the complaint, defendant pleaded two affirmative defenses, each predicated on an exculpatory provision contained in a rate schedule agreement furnished to plaintiff by defendant. At the conclusion of the trial, on the basis of those provisions, the court granted defendant's motion for judgment dismissing the complaint and denied plaintiff's motion to dismiss the affirmative defenses, it having been stipulated that plaintiff had an extended coverage all risk insurance policy on the goods damaged.

We believe this was error, because the exculpatory provisions were ineffective under subdivision (3) of section 7-202 of the Uniform Commercial Code. The exoneration paragraphs read as follows:

Section 7(c) "Warehouseman shall not be liable for damage to customer's goods which are damaged or destroyed by perils insured against by customer; as evidence of which customer waives any and all right of recovery from warehouseman for losses caused by the perils covered by fire and extended coverage insurance and caused by any other perils against which customer has insured."

Section 20 "Warehouseman's responsibility for storage and handling is limited to 'reasonable care as a reasonably careful owner of similar goods would exercise'. Warehouseman shall not be liable for any loss or damage to the goods which could not have been avoided by the exercise of such care nor for loss or damage to insured goods as provided in section 7(c)."

Individually and together these provisions were an attempt to exempt the warehouseman from liability for damages to stored goods from perils against which the bailor had secured insurance, even when caused by defendant's negligence. However, a warehouseman's liability is fixed by subdivision (1) of section 7-204 of the Uniform Commercial Code, which states: "A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care." Subdivision (2) of the same statutory section provides the extent to and manner in which the liability imposed by the preceding subdivision may be modified: "Damages may be limited by a term in the warehouse receipt or storage agreement *limiting the amount of liability* in case of loss or damage, *and setting forth a specific liability* per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, however, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. No such limitation is effective with respect to the warehouseman's liability for conversion to his own use." (Emphasis supplied.)

Section 7-202 of the code, relating to terms in a warehouse receipt, provides in part: "(3) A warehouseman may insert in his receipt any other terms which are not contrary to the provisions of this Act and *do not impair* his obligation of delivery (Section 7-403) or *his duty of care* (Section 7-204). *Any contrary provisions shall be ineffective.*" (Emphasis supplied.)

Thus, the statute imposes on the warehouseman a responsibility for breach of a duty of reasonable care, permits a modification of the amount of liability upon prescribed conditions, compliance with which is prerequisite to such modification *(Melodee Lane Lingerie Co. v American Dist. Tel. Co.,* 18 NY2d 57), and makes ineffective any other attempt to alter the warehouseman's obligation. We think an accurate statement of the rule is that contained in the unreported decision

in *Modelia, Inc. v Rose Warehouse* (NYLJ, Oct. 29, 1968, p 2, col 3): "The business of warehousing is charged with the public interest. It is the public policy of this state, declared in section 7-204(1) of the Uniform Commercial Code, that a warehouseman is responsible for negligent damage to goods in his custody. He may not contract away or lessen his responsibility except in such manner as the statute provides. The warehouseman's liability for negligence has in effect been placed on a par with that of hotel keepers and carriers. Thus, just as a hotel keeper may limit his responsibility only by complying with section 202 et seq. of the General Business Law and a carrier only by complying with the relevant statutes, so, too, a warehouseman is required to comply with section 7-204(2) of the Uniform Commercial Code in order to properly limit his liability. Any other attempted exoneration or limitation would defeat the statute and must be held void (Adler v Bush Terminal Co., 161 Misc 509, affd 250 App Div 730; N.Y. & Honduras R.M. Co. v. Riddle Airlines, 3 AD2d 457; affd 4 NY2d 755; Epp v. Bowman-Biltmore Hotels Corp., 171 Misc 338)." (5 UCC Reporting Service 1004, 1006.)

The Uniform Commercial Code does not authorize exculpatory provisions like those contained in sections 7(c) and 20 of defendant's rate schedule agreement, under which the warehouseman is totally exempt from liability in a particular situation - i.e., when the bailor has secured insurance against the peril resulting in the damage to the goods stored.

The distinction between a limitation of liability and an exemption from liability for one's own negligence has been recognized *(Melodee Lane Lingerie Co. v American Dist. Tel. Co., supra,* p 69), and the latter, when it exonerated a warehouseman from liability for damage from certain described perils (though not from all perils) has been held to violate a statutory bar against agreements exempting from liability for negligence *(Adler v Bush Term Co.,* 161 Misc 509, affd 250 App Div 730; see, also, *Fireman's Fund Amer. Ins. Co. v Capt. Fowler's Marina,* 343 F Supp 347). As is stated in a recognized treatise on New York law, "it would appear clear that a warehouseman may not by contract totally exempt himself from liability for the consequences of his negligence" (63 NY Jur, Warehouses and Warehousemen, § 16).

Defendant's claim that it has not improperly limited its liability or diminished the standard of care owed by it, because in section 20 of the rate schedule agreement it has

defined its standard of care in terms described as "precisely equal to the standard set forth by statute in section 7-204 of the Uniform Commercial Code," is unpersuasive. It overlooks the fact that paragraph 20 goes beyond the code provision and confers an additional exemption from liability, not authorized by the code, when it attempts to eliminate liability for "damage to insured goods as provided in section 7(c)". That exoneration—originating with the warehouseman and not authorized by the statute—must be held ineffective by virtue of subdivision (3) of section 7-202 of the code.

The affirmative defenses based on the ineffective provisions of the rate schedule agreement should have been dismissed and the case should have been submitted to the jury for determination of the issues posed by defendant's denials, including issues of negligence and contributory negligence.

The judgment should be reversed, the motion to dismiss the affirmative defenses granted and the case remitted for a new trial.

MARSH, P. J., MOULE, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously reversed with costs, motion to dismiss affirmative defense granted and matter remitted for a new trial.