**BUTLER MANUFACTURING CO., et al., Plaintiffs,**

v.

**AMERICOLD CORPORATION, et al., Defendants.**

Nos. 92–2118–JWL, 92–2354, 92–2355, 92–2361, 92–2375, 92–2397, 92–2427, 92–2429, 92–2458 and 93–2024.

United States District Court, D. Kansas.

Sept. 9, 1993.

Scott Christopher Long, Payne & Jones, Chtd., Overland Park, KS, for Hartford Cas. Ins. Co. and QHC, Inc.

Paul H. Niewald, Niewald, Waldeck & Brown, Mary M. Kenney, William H. Sanders, Floyd R. Finch, Jr., Katherine S. Bunn, Brian J. McGrath, Blackwell, Sanders, Matheny, Weary & Lombardi, Douglas R. Richmond, Robert G. Rooney, Lynn W. Hursh, Armstrong, Teasdale, Schafly & Davis, James S. Kreamer, Baker, Sterchi & Cowden, Kansas City, MO, James M. Yeretsky, Patrick J. Doran, Niewald, Waldeck & Brown, Overland Park, KS, for Americold Services Corp. and Americold Corp.

Richard N. Bien, James A. Durbin, Swanson, Midgley, Gangwere, Clarke & Kitchin, William J. Gotfredson, Edward J. Barbosa, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Clarke & Kitchen, Overland Park, KS, for Safeway Inc.

Robert A. Babcock, Phillip C. Rouse, Baker, Sterchi & Cowden, Kansas City, MO, James S. Kreamer, Baker Sterchi & Cowden, Overland Park, KS, Julius Denenberg, Charles R. Tuffley, Todd B. Denenberg, Dennis L. Hearon, Denenberg, Tuffley & Jamieson, Southfield, MI, for Sav. and Loan Data Corp., Inc., Federal Ins. Co., Great Northern Ins. Co., Atlantic Mut. Ins. Co., Starting Right Co., Allianz Ins. Co., St. Paul Fire and Marine Ins. Co., J.C. Benage, Dennis A. Brown, Lawrence H. Kruse, James W. McKinney, Erwin Oetting, Jr., John F. Peterson and Robert A. Yeckel.

Thomas R. Buchanan, and Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Butler Mfg. Co., Inc.

Michael G. Norris, Payne & Jones, Chtd., Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Associated Wholesale Grocers, Inc.

Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Allendale Mut. Ins. Co.

Michael F. Saunders, J. Bradley Leitch, Spencer, Fane, Britt & Browne, Kansas City, MO, for Jianas Bros. Packaging Co.

Richard C. Wallace, Evans & Mullinix, P.A., Lenexa, KS, for Magnolia Beef Intern.

Edward J. Barbosa, Kipmeyer, McCann, Smith, Manz & Gotfredson, Edward L. Smith, Kansas City, MO, for Fleming Companies Inc., Pierce Trading Corp., Twin City Foods Inc., Midland Foods Distribution, Inc., Kemper Lloyd's Ins. Co., Institute of London Underwriters and Lloyd's of London.

Margaret A. Gallagher, Andrew K. Haynes, Sinclair, Sawyer, Thompson & Haynes, P.C., Kansas City, MO, Catherine M. Graham, Cripe & Graham, Gary E. Cripe, Upland, CA, for Earth Elements, Inc.

Daniel Q. Harrington, Cozen and O'Connor, Philadelphia, PA, Margaret A. Gallagher, Sinclair, Sawyer, Thompson & Haynes, P.C., Kansas City, MO, for Fireman's Fund Ins. Co.

F. Carlton King, Jr., Chad A. Shultz, Ford & Harrison, Atlanta, GA, Michael R. Lawless, Mission, KS, for Meyners–Robinson Co., Inc.

Michael Hufft, Steven J. Quinn, Merrick, Baker, Fox, Hufft & Strauss, Ronald L. Holt, Todd P. Graves, Bryan Cave, Kansas City, MO, Thomas J. Bath, Jr., Bryan Cave, Overland Park, KS, for Food Barn Stores, Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This consolidated action arises out of a fire that occurred at an underground warehouse

facility owned and operated by defendants Americold Corporation and Americold Services Corporation. The plaintiffs in the various consolidated cases consist of corporations who had stored foodstuffs, records and other goods which were damaged in the fire and various insurers of those goods. Plaintiffs in the various consolidated cases seek damages based on a number of tort and contract theories, including negligence, gross negligence, and willful and/or wanton conduct.

While the claims of the various plaintiffs are myriad, the various goods stored in the warehouse facility fall into several general categories, including those covered by what are denominated as record storage contracts, those covered by warehouse receipts, and those covered by what are termed leasehold contracts. This matter is currently before the court on a motion for partial summary judgment (Doc. # 26) which was filed by defendants in case number 92–2361.[1] The defendants' motion deals with issues relating to the applicability of an exculpatory clause and a limitation on damages that were contained in the various record storage contracts. Nearly all plaintiffs who stored records at the warehouse facility executed identical record storage contracts with defendants. Defendants seek a ruling from the court that the limitations on damages and exculpatory provisions contained in the record storage contracts do not violate public policy, are valid and should be enforced. Because several plaintiffs are similarly situated regarding the applicability of these provisions in the record storage contracts, the court directed that all plaintiffs with similar provisions in their record storage contracts should respond to defendants' motion.

■ Certain plaintiffs subsequently filed a response to defendants' motion for partial summary judgment and their own cross-motion for summary judgment (Doc. # 27). In their response these plaintiffs argue that there are four independent reasons why the exculpatory clause and limitation of damages provisions contained in the record storage contracts are unenforceable as being contrary to Kansas public policy. Plaintiffs contend that: (1) the liability limitation provisions are contrary to the provisions of the Uniform Commercial Code (the "UCC"); (2) the defendants are professional bailees who cannot disclaim or limit their liability for their own negligence; (3) the liability limitation provisions are unenforceable as applied to plaintiffs' claims of gross negligence and, willful and/or wanton conduct[2]; and (4) the liability limitation provisions are unenforceable if defendants violated applicable building, fire and/or life safety codes. In their cross-motion for partial summary judgment, plaintiffs contend that they are entitled to an order striking all of defendants' affirmative defenses based upon the exculpatory clause and limitation of damages provisions contained in the record storage contracts.

■ Following a thorough examination of the arguments and authorities submitted by the parties and a review of the relevant case law, the court finds that defendants' motion for partial summary judgment should be denied and plaintiffs' cross-motion for partial

1. Defendants' motion for partial summary judgment was filed on April 27, 1992, all responses and replies to the motion have been filed, and the motion is ripe for adjudication by the court. While it was the court's intention that May 1, 1993 would be the deadline for filing all dispositive motions relating to record storage issues, due to ambiguity in the scheduling order, defendants have filed some further motions dealing with record storage issues prior to a September 1, 1993 deadline that was set by the court. (Specifically, the court notes that motions for summary judgment denominated as Doc. # 10 in case no. 93–2196–JWL and Doc. # 35 in case no. 92–2362–JWL deal with record storage issues). Because those motions are not yet at issue, those motions are not specifically covered by this order. The court will issue a separate order re-

garding those motions once they are at issue. Naturally such order will be based on the court's legal conclusions contained in this order, which the parties may want to keep in mind when formulating their responses and replies to those motions.

2. Kansas law, which all parties agree applies to this diversity action, does not recognize degrees of negligence. See *Muhn v. Schell*, 196 Kan. 713, 413 P.2d 997 (1966); *Holman v. Southwestern Bell Tel. Co.*, 358 F.Supp. 727 (D.Kan.1973). The term "gross negligence" is generally considered synonymous with "wanton conduct" and it will be so treated in this case. However, because the documents refer to "gross negligence" the court will also in its discussion.

summary judgment should be granted.[3] As more fully set forth below, the court finds that the liability limitation provisions relating to defendants' liability for their ordinary negligence are not enforceable because they do not comply with Article 7 of the UCC. The court additionally finds that the contractual provisions purporting to limit defendants' liability for damages caused by defendants' reckless, willful or wanton conduct are also unenforceable under Kansas law.

## II. Factual Background

Plaintiffs have sued defendants for alleged destruction and damage to property stored in defendants' underground warehouse located at 6500 Inland Drive, Kansas City, Kansas. The warehouse in question is located in a limestone cave which was originally formed during mining operations. Plaintiffs' claims arise from a fire which broke out at the warehouse on December 28, 1991. Plaintiffs have filed various claims in the consolidated cases which seek relief for property damage, extra expenses and costs, lost profits and attorneys' fees.

Many of the plaintiffs in the consolidated cases stored business records within the warehouse, which those plaintiffs allege were damaged or destroyed in the subsequent fire. Each of the plaintiffs who had stored records at the warehouse executed a standard Records Storage Contract ("Contract") with the defendants which governed the storage of such records. Each of the Contracts contain an exculpatory clause purportedly excusing defendants from any claim against them for ordinary negligence and a clause purporting to limit the total amount of damages that can be collected from defendants, regardless of the cause of action. It is the applicability of these two provisions of the Contracts that is at issue in these motions.[4]

Condition of rental 1 of the Contracts provides that:

It is expressly agreed that this contract is not intended to create the relationship of bailor and bailee but that of landlord and tenant, and Lessee expressly waives any right to claim that this contract is one for a bailment. Lessor undertakes only to provide Lessee with space of the character generally made available by Lessor for storage of goods and to act as the agent of Lessee in rendering the services outlined herein and on the other side hereof. Lessee assumes all risk of loss or damage to records stored or handled pursuant hereto and waives all rights of action against Lessor and releases it from all responsibility for loss of or injury to such records except for gross negligence or willful injury. Lessee expressly waives every presumption of law and fact that loss shall have occurred through negligence of Lessor, and Lessee agrees that Lessor shall not be liable for any loss sustained by Lessee unless such loss shall be occasioned by some specific, clearly proven, willful act or gross negligence of Lessor and then only to the extent elsewhere herein provided. Lessor shall not, in any event, be liable for any loss or damage caused by any act or neglect of any person or persons not in the employ of Lessor.

Condition of Rental 7 of the Contracts provides as follows:

(a) The rental storage rate is based upon the space occupied by the records. Lessee hereby declares the value of all records stored under the terms of this Record Storage Contract to be two dollars ($2.00) per cubic foot of space occupied. Such

---

**3.** The court finds that oral argument would not assist it in deciding these motions and, accordingly, no hearing was held.

**4.** The Contracts executed by plaintiffs are form contracts that are substantially similar. All the Contracts contain the liability limitation provisions that are the subject of these motions. The court has therefore ordered that all plaintiffs who have filed claims for damages to records covered by these similar Contracts to respond to defendants' motion. This order shall extend to all claims for damages to records covered by the

Contracts. If there are record storage contracts in the consolidated cases that contain modifications of the standard contract which causes either plaintiffs or defendants to contend that this order should not extend to the contracts as modified, the affected parties are directed to bring this to the attention of the court by motion filed no later than September 17, 1993. (The court will consider separately any arguments made in the summary judgment motions that were filed prior to the September 1, 1993 deadline).

value shall be the agreed upon value for all purposes.

(b) Lessor's liability shall be limited as set forth in paragraph 1, above, and its liability for any loss due to either damage or destruction of records or delay or inaccuracy in furnishing of information or due to any other cause whatsoever shall be limited to the declared value of the records and in no event shall Lessor be liable for any consequential or other damage in any amount whatsoever.

### III. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirma-tive duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

The central question facing the court in defendants' motion for partial summary judgment and plaintiffs' cross-motion is what legal effect should be given to the exculpatory clause contained in condition of rental 1 of the Contracts and the limitation on liability provision contained in condition of rental 7 of the Contracts.

In their initial motion, defendants argue that full effect should be given to the liability limitation provisions because the Contracts were fairly bargained for by the parties, there was no unconscionable disparity in bargaining power between them, and the liability limitation provisions are acceptable allocations of risk agreed to by business parties standing on equal footing in a commercial setting. Defendants rely on several Kansas cases that recognize that mentally competent parties may make contracts on their own terms and fashion their own remedies provided that the agreement is not illegal, contrary to public policy, or obtained by fraud, mistake, overreaching or duress. *See Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 732 P.2d 1260 (1987); *Belger Cartage Service, Inc. v. Holland Const. Co.*, 224 Kan. 320, 582 P.2d 1111 (1978); *Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc.*, 217 Kan. 88, 535 P.2d 419 (1975).

While the court agrees with defendants that Kansas law is fairly liberal in allowing business parties standing on equal footing

freedom to negotiate contractual provisions, including certain risk allocation provisions, the court finds that the parties' freedom of contract in the present case is constrained by the provisions of Article 7 of the UCC,[5] which is made applicable to the parties' business relationship due to defendants' status as a "warehouseman" as defined under the UCC.

K.S.A. § 84–7–102(1)(h) defines a warehouseman as "a person engaged in the business of storing goods for hire." The records clearly fall under the UCC's definition of goods, which are defined under K.S.A. § 84–7–102(1)(f) as including "all things which are treated as movable for the purposes of a contract of storage or transportation." The court finds that the defendants in this consolidated action clearly are warehousemen as defined by K.S.A. § 84–7–102(1)(h). One need only look at the provisions in the Contracts to see that defendants were engaged in the business of storing goods (the records) for hire (plaintiffs were paying them for storage). It is true that defendants did not issue documents specifically entitled "warehouse receipts" regarding the records, however, that is not material in the determination of whether defendants are warehousemen as defined by the UCC. *See Georgia Ports Authority v. Servac Intern.,* 202 Ga.App. 777, 415 S.E.2d 516 (1992); *Indemnity Marine Assur. Co., Ltd. v. Lipin Robinson Warehouse Corp.,* 99 Mich.App. 6, 297 N.W.2d 846 (1980). If the drafters of Article 7 had wished to limit the application of its provisions to situations in which documents specifically entitled warehouse receipts were issued, they could easily have done so.

Unlike the other major articles of the UCC, Article 7 does not include one basic provision outlining its scope. *See* James J. Wright & Charles S. Summers, Uniform Commercial, Code, Vol. II, § 21–2 (3d ed. 1988). Thus, its scope must be determined by the applicability of its individual provisions. Due to defendants' status as warehousemen, their actions with respect to the records storage contracts is governed by K.S.A. § 84–7–204, which provides as follows:

Duty of care; contractual limitation of warehouseman's liability.

(1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

(2) Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or per unit of weight, beyond which the warehouseman shall not be liable ...

K.S.A. § 84–7–204.

K.S.A. § 84–7–204 sets forth the applicable duty of care which is imposed on a warehouseman and also provides a method for a warehouseman to limit his liability for a breach of such duty. Defendants argue that the exculpatory clause in condition of rental 1 and the damage limitation provision in condition of rental 7 of the Contracts sufficiently comply with the requirements of K.S.A. § 84–7–204 and should be given effect. Plaintiffs, on the other hand, contend that those provisions do not comply with the UCC and are therefore invalid.

The relevant language of the exculpatory clause contained in condition of rental 1 reads as follows:

... Lessee assumes all risk of loss or damage to records stored or handled pursuant hereto and waives all rights of action against Lessor and releases it from all responsibility for loss of or injury to such records except for gross negligence or willful injury. Lessee expressly waives every presumption of law and fact that loss shall have occurred through negligence of Lessor, and Lessee agrees that Lessor shall not be liable for any loss sustained by Lessee unless such loss shall be occasioned by some specific, clearly proven, willful act or gross negligence of Lessor and then only to the extent herein provided.

5. The Kansas version of the Uniform Commercial Code is set out at K.S.A. §§ 84–1–101 et seq.

The plain language of condition 1 provides that it is an attempt by defendants to disclaim all liability for ordinary negligence and allow recovery under the Contracts only if the actions of the defendants amounted to gross negligence or willful injury. Such a disclaimer is expressly forbidden by the UCC. K.S.A. § 84–1–102(3) provides that "[t]he effect of provisions of this act may be varied by agreement ... except that the obligations of good faith, diligence, reasonableness and care prescribed by this act may not be disclaimed by agreement." Moreover, K.S.A. § 84–7–202(3) specifically provides that a warehouseman cannot "impair his duty of care" by an agreement. Courts have consistently held that a contractual provision exculpating a warehouseman from all liability for its own negligence is unenforceable, as it is an impermissible attempt to impair the warehouseman's § 7–204(1) duty of care. *See Fireman's Fund Am. Ins. Co. v. Capt. Fowler's Marina, Inc.*, 343 F.Supp. 347, 350 (D.Mass.1971); *Kimberly–Clark Corp. v. Lake Erie Warehouse, Div. of Lake Erie Rolling Mill, Inc.*, 49 A.D.2d 492, 375 N.Y.S.2d 918 (1975).

The question thus becomes whether condition of rental 7, either read alone or in conjunction with condition 1, can be found to comply with the requirements of K.S.A. § 84–7–204(2) in order to effectively limit defendants' liability for ordinary negligence. Condition 7(b) contains a cross-reference to condition 1, stating that "Lessor's liability shall be limited as set forth in paragraph 1, above...." Following this language, condition 7 continues on to state that defendants' "liability for any loss due to either damage or destruction of records or delay or inaccuracy in furnishing of information or due to any other cause whatsoever shall be limited to the declared value of the records and in no event shall Lessor be liable for any consequential or other damage in any amount whatsoever."

■ The primary rule in construction of any contract is to ascertain the intent of the parties, and such intent can best be determined by looking at the language employed in the contract and taking into consideration all the circumstances and conditions which confronted the parties when they made the contract. *See New Hampshire Ins. Co. v. Fox Midwest Theaters, Inc.*, 203 Kan. 720, 726, 457 P.2d 133 (1969). The court has carefully analyzed the language of conditions 1 and 7, and the court finds that, from their plain language, the intended effect of the conditions is clear. A reading of the language of condition 1 leads to the inevitable conclusion that the intended effect of condition 1 was to eliminate entirely any liability by defendants for their ordinary negligence, and to allow recovery under the contract only if the actions of defendants amounted to gross negligence or willful conduct. The cross reference in condition 7(b) to condition 1 indicates that the parties intended the limitations of condition 1 to stand on their own, and the logical reading of the remaining limitations on damages contained in condition 7(b) is that those limitations were intended to apply to actions other than those for ordinary negligence. Such intent can be seen from reading the cross reference in conjunction with the further language of condition 7(b) which refers to "*any* loss due to either damage or destruction of records" and the language referring to loss "due to *any other cause whatsoever*" (emphasis added). In short, the court finds that the only logical reading of the plain language of the conditions leads to the conclusion that the parties intended condition 1 to eliminate all liability on the part of defendants for negligent conduct, and that condition 7(b) is designed to limit the defendants' damages for other types of conduct.

The court finds that the damage limitation provisions do not comply with the requirements of K.S.A. § 84–7–204, and therefore they cannot be given effect. K.S.A. § 84–7–204 sets forth in straightforward terms the warehouseman's duty of care and specifically sets forth that a warehouseman may limit (not eliminate) his liability in damages for a breach of that duty by "setting forth a specific liability per article or item, or per unit of weight." Rather than follow the statutory requirements to properly limit liability for ordinary negligence, the Contracts purport to totally eliminate all liability for ordinary negligence (which is not allowed under the UCC) and to limit damages for all other

conduct (which is not contemplated by the UCC and, as discussed later in this opinion, is not valid under Kansas common law).

■ Defendants argue that the provisions should be given effect in order to effectuate the intent of the parties because the provisions were freely executed by competent parties of equal bargaining power. As appealing as that argument is, it appears inescapable that the freedom of the parties to fashion their own terms and remedies is limited in this case by the applicability of Article 7, which provides in express terms the manner in which a warehouseman may limit his liability.[6] The court finds that it is simply not possible to read the Contracts in a manner that complies with the requirements of § 84–7–204. Kansas law traditionally has not favored contracts for exemption from liability for negligence, and such contracts have been strictly construed against parties relying on them. *See Cason v. Geis Irrigation Co. of Kansas, Inc.,* 211 Kan. 406, 507 P.2d 295 (1973); *Talley v. Skelly Oil Co.,* 199 Kan. 767, 433 P.2d 425 (1967). It is obvious that when construed strictly, the provisions of the Contracts do not meet the requirements of K.S.A. § 84–7–204. Rather than limit defendants' damages for negligence as provided for by statute, the Contract provisions attempt to eliminate the defendants' liability for ordinary negligence altogether. It is true that the rule of strict construction must give way where it is plain that such construction of a contract does not convey the true intention of the parties. *See New Hampshire Ins.*

*Co.,* 203 Kan. at 726, 457 P.2d 133. However, here the plain language of the provisions leads to the conclusion that the true intention of the parties was to entirely eliminate defendants' liability for negligence. Such a disclaimer is clearly not allowed under the UCC. In order for the limitation of damages for ordinary negligence to apply, the court would have to determine that the parties truly did not intend to entirely eliminate defendants' liability for ordinary negligence, as plainly set out in the Contracts, rather, their true intention was to limit the defendants' liability in such a manner as would comply with K.S.A. § 84–7–204. The court does not believe such a reading of the Contracts is warranted by law or by common sense.[7]

The court does feel some empathy for the defendants as a result of the disallowance of any damage limitation for ordinary negligence. As defendants point out in their briefs, the record storage contracts appear to have been negotiated freely and fairly by sophisticated business entities, and there is no indication of any substantial disparity in bargaining power that would make the contracts suspect. Plaintiffs may even reap a windfall by way of the allegedly lower storage charges they paid. However, none of this changes the fact that the legislature has seen fit to provide a specific method for warehousemen to limit their liability for ordinary negligence in K.S.A. § 84–7–204, and the fact that this method was not utilized in the formation of the Contracts. Whether the

---

**6.** As one commentator has noted, the extent to which warehousemen may, by contract, displace otherwise applicable Code provisions under Article 7 is limited.

> ... most sections of Article Seven are not variable by agreement. Article Seven is unlike Article Two on sales and Article Nine on secured transactions where freedom of contract is the rule rather than the exception. The paucity of free contract under Article Seven can be readily explained. The Article deals with two ancient common callings, namely storage and transport. Nonvariable rules prevent storers and transporters from overreaching their customers and from discriminating between them. Also, documents of title demand the certainty of nonvariable rules. Hence, some of the rules impose essentially nonvariable duties of care and nonvariable duties with respect to delivery....

J. White & R. Summers, Uniform Commercial Code (3rd ed.) § 21–2, at 135 (West 1988). Whether or not that view is really appropriate when the storing parties are sophisticated business entities, the restrictive flavor of Article 7 is clearly apparent and any modification of it must be left to the legislative branch.

**7.** The court does not discount the potential for overreaching in this situation. A warehouseman could well seek to reap the benefits of the *in terrorem* effect of any overly broad disclaimer and then attempt to hide behind a "practical" construction of the language when and if their hand was called. Deterring that sort of "having it both ways" may be reason enough for a strict construction approach even though there is no indication of any such intention on the part of defendants here.

policy reasons warrant such restrictions on the ability of warehousemen to limit their liability is not the question before the court. While it is certainly arguable that in a case such as we have here, involving sophisticated business entities with apparently equal bargaining power, it might be better policy to let the parties freely bargain for their share of risk, that does not override the legislature's clear pronouncement of one specific method for warehousemen to limit their liability. The parties could have formulated a contract limiting damages that complied with the requirements of K.S.A. § 84-7-204. This they did not do. It is not the function of this court to disregard the clear statutory requirements required for a warehouseman to limit liability merely because the equities of this situation might lead the court to a different result.

■ Having determined that the liability limitation provisions of the Contracts do not operate to limit defendants' damages for ordinary negligence due to their failure to comply with the requirements of Article Seven of the UCC, the remaining issue for determination is whether the provisions operate to limit defendants' damages for gross negligence and willful or wanton conduct.

By its terms, condition 1 does not apply to gross negligence or willful injury. However, condition 7(b) provides that liability for "*any* loss due to either damage or destruction of records or delay or inaccuracy in furnishing information or *due to any other cause whatsoever* shall be limited to the declared value of the records and in no event shall Lessor be liable for any consequential or other damage in any amount whatsoever." The plain meaning of that language includes limiting damages caused by defendants' gross negligence and willful or wanton conduct.

Defendants contend, in fact, that condition 7(b) should be given effect to limit defendants' damages based upon any gross negligence or willful or wanton conduct on their part that may have caused plaintiffs to incur damage. Defendants argue that Kansas law would recognize exculpatory clauses relieving a party from liability for gross negligence and willful or wanton conduct provided the clauses were negotiated by competent parties of equal bargaining power. Plaintiffs, on the other hand, argue that clauses relieving parties of liability for their gross negligence or willful or wanton conduct are contrary to public policy and unenforceable under Kansas law. Article 7 does not speak to such a limitation on damages directly (although one might argue that, by inference, if the Code provision for limiting damages for ordinary negligence is not followed there cannot be a limitation on damages imposed only on conduct which is more highly culpable). The Kansas common law, however, does.[8]

In *Western Union Tel. Co. v. Crall,* 38 Kan. 679, 17 P. 309 (1888) the Kansas Supreme Court disallowed a damage limitation provision, holding that such limitations are unenforceable where damages result from gross negligence or willful misconduct in performing a service for another for hire. While the court might not be inclined to find *Western Union* to be particularly persuasive precedent due to its age and the modern progression in Kansas common law towards the allowance of freely bargained for exculpatory contractual provisions in the area of ordinary negligence, no subsequent case law has overruled the holding in *Western Union.* That holding is directly on point here.

Also indicative to the court that *Western Union* still reflects the current status of Kansas law are several more recent decisions by the Kansas Supreme Court reflecting that provisions limiting liability for gross, wanton or willful conduct would not be permitted. In *Talley v. Skelly Oil Co.,* 199 Kan. 767, 433 P.2d 425 (1967), the court quoted with approval a statement from the Restatement of Contracts that "[a] bargain for exemption from liability for the consequences of a wilful breach of duty is illegal . . ." *Id.* at 772, 433 P.2d 425. In *Corral v. Rollins Protective Services Co.,* 240 Kan. 678, 732 P.2d 1260 (1987) plaintiff sued a fire and burglary alarm company for negligence after his system failed and he sustained damages from

8. K.S.A. § 84-1-103 provides that unless displaced by particular provisions of the UCC, the common law shall remain viable.

fire. The court upheld a damages limitation in a security system contract, but only after noting that Corral had *not* alleged gross or wanton conduct, stating:

> There is no contention here that Corral was at any business disadvantage or that he did not or could not understand the clear terms of the contract. Also, there does not appear to be any contention that the agreement was obtained by Rollins through fraud, mistake or duress. *Neither is there any contention that Rollins was guilty of any gross or wanton negligence or intentional misconduct* which resulted in the failure of the alarm system. The limitation of liability clause is not contrary to public policy and the district court did not err in finding it valid as to the claims based upon negligence and strict liability and limiting Rollins' liability thereunder.

*Id.* at 683–84, 732 P.2d 1260 (emphasis added).

The clear implication of the Supreme Court's statement is that willful or wanton conduct cannot be the subject of limitations on liability.

In contrast to the authorities cited above, the court has been unable to find a single Kansas case in which a liability limitation provision limiting liability for gross negligence or for willful or wanton conduct has been upheld. For these reasons, this court's reading of pertinent Kansas authority leads the court to conclude that Kansas law prohibits the enforcement of liability limitation provisions limiting damages for gross negligence and willful or wanton conduct. Therefore, the court finds that the liability limitation language in condition 7(b) does not serve to limit defendants' damages in that respect.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendants' motion for partial summary judgment (Doc. # 26) is denied and plaintiffs' cross-motion for partial summary judgment (Doc. # 27) is granted. The liability limitation provisions relating to defendants' liability for their ordinary negligence are not enforceable due to the failure of the contractual provisions to comply with Article 7 of the UCC. The contractual provisions purporting to limit defendants' liability for damages caused by defendants' gross negligence and willful or wanton conduct are unenforceable under Kansas·common law.

This order applies to all claims for damages to records covered by the form record storage contracts in the consolidated action. If any parties believe this order is not applicable to a specific records storage contract because the standard contract was somehow modified, the affected parties are directed to bring this to the attention of the court by motion dated no later than September 17, 1993.

**IT IS SO ORDERED.**