No. 41,132

MILDRED V. STEPHENS, *Appellee,* v. WILLIAM B. MCGUIRE, d/b/a McGUIRE's HELP SELF LAUNDRY, *Appellant.*

(334 P. 2d 363)

Opinion filed January 24, 1959.

*Max Wyman* and *Don Wyman*, both of Hutchinson, were on the briefs for the appellant.

*Abraham Weinlood, Bill R. Cole, Kenneth F. Ehling, D. Stewart Oswalt*, and *John H. Shaffer*, all of Hutchinson, were on the brief for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The appellee sued the appellant in the court below alleging she received personal injuries in the use of an alleged defective electric washing machine furnished to her at appellant's self-service laundry. Appellant appeals from the order of the district court overruling a demurrer to appellee's amended petition.

The pertinent parts of the amended petition are contained in four paragraphs thereof which are set out below:

### I.

"At all times material hereto the Defendant, William B. McGuire, owned and operated a so-called 'self service' laundry at 531 East Fourth Street, Hutchinson, Kansas, under the style of McGuire's Help Self Laundry'. In such business the Defendant offered for hire to each of his customers the temporary use of the premises above described together with a washing machine and a clothes wringer, such appliances to be operated personally by the customer. Each wringer was an electric power driven machine which compressed the water out of wet clothes by means of two rollers horizontally arranged so that they were forced tightly against each other. The wet clothes were fed into the wringer by being pressed against the rollers while such rollers were in motion so that the wet articles were caught and drawn between the rollers. At the top of the framework holding the rollers in place was a safety device by means of which the rollers could be readily disengaged and the pressure on the rollers against each other or any article or object compressed between them could be released. Such safety device was for the protection of users of the machine against injury to their persons, and the wringer was a potentially dangerous appliance if the safety device was not in good working order and repair.

## II.

"On or about November 10, 1956, Plaintiff entered the aforesaid business establishment of Defendant, as a customer, and arranged, for a fee, for the use of one of the washing machines and one of the wringers. She assumed, and had a right to assume, that the particular wringer assigned to her use would be in good repair and that all switches and safety devices would be in good operating order. Thereafter she laundered the clothing and articles which she had brought with her; and then was using the wringer for its intended purpose of squeezing excess water from such articles. In the course of introducing and feeding some of the clothing through the wringer the fingers of her left hand were caught between the rollers and her hand was drawn into and through the wringer. The Plaintiff immediately and repeatedly attempted to operate the safety device referred to in the foregoing with her other hand, for the purpose of disengaging the rollers and releasing her hand; but notwithstanding such efforts on her part the safety device failed to operate and failed to release her hand, so that not only her hand but her left arm was drawn into and through the rollers to her elbow. At that point the bend of plaintiff's arm prevented her elbow and upper arm from passing through the wringer but the lower roller continued to rotate against her arm. As soon as Plaintiff realized that the safety release would not operate she attempted to stop the rotation of the rollers by means of the stop and start switch but such switch failed to operate. Plaintiff then attempted to reach the switch controlling the electric power to the motor, but such switch was beyond her reach from the position in which she was held by the wringer. The lower roller continued to turn against Plaintiff's arm for a considerable period of time, estimated by Plaintiff to be two to three minutes, and until the person employed or assigned by Defendant to be in charge of said premises and equipment arrived and turned off the power, and thereafter, by use of considerable force, disengaged Plaintiff's arm.

## III.

"At the time when said wringer was placed at Plaintiff's disposal, the same was defective or out of repair with respect to the safety device and to the starting switch in that the safety release and the switch would not operate when Plaintiff's hand and arm were drawn into the wringer. Such defective condition and state of disrepair were unknown to the Plaintiff; but Defendant and his servants knew, or should have known, of such defective conditions of said wringer by proper inspection. The Defendant and his servants and employees were guilty of negligence toward Plaintiff which was the proximate cause of the damages and injuries to Plaintiff hereinafter set forth, in

"A. Failing to properly inspect and check the wringer, and especially the safety device, prior to its being furnished to Plaintiff.

"B. Furnishing a wringer on which the safety device and switch were defective and out of repair.

"C. Plaintiff further alleges that the specific defects in the wringer which resulted in the failure of the safety device and switch thereon to operate, are unknown to Plaintiff; that Plaintiff had no control over the care, inspection and maintenance of said wringer; but that the Defendant, his agents, servants and employees at all times had full control over said wringer and all its parts,

including the right of inspection and repair; and that the safety device and switch on the wringer would have operated safely, and no injury would have resulted to Plaintiff if the Defendant, his servants, agents and employees had been in the exercise of due care under the circumstances; and that such a failure of the safety device and switch does not occur in the normal experience of men, in the absence of negligence on the part of those in control of such equipment. That Defendant and his agents, servants and employees were guilty of negligence toward Plaintiff in respects other than those specified in A and B above, which other negligence, by reason of the absence of knowledge and control over said wringer, Plaintiff is unable to further specify, but which negligence is known or ought to be known to Defendant, his agents, servants and employees by reason of their exclusive knowledge and control of said wringer.

IV.

"As the proximate result of all of the foregoing, Plaintiff received personal injuries which were the sole and proximate result of the negligence of Defendant in failing to properly inspect and check the equipment and in furnishing for the use of Plaintiff such defective equipment and equipment out of repair, on which the safety device and switch would not operate."

The amended petition continued by alleging damages and prayed for judgment in the sum of $20,569.37.

While appellant has appealed from an intermediate motion to strike as well as from the order overruling his demurrer, only one question is argued in the brief which apparently has to do with the order on the demurrer. At any rate, it would seem that the same question would arise on the motion to strike. The contention of appellant seems to be that appellee's amended petition fails to state a cause of action on the theory of *res ipsa loquitur.*

Appellant's actual argument comes down to the contention that the amended petition shows contributory negligence upon the part of the appellee in allowing her fingers to be caught in the wringer and that therefore, the doctrine of *res ipsa loquitur* has no application. Of course, if contributory negligence appears, not only is the petition insufficient on the theory of *res ipsa loquitur,* but it would also be insufficient on the theory of specific allegations of negligence.

Moreover, contributory negligence has always been held in this state to be an affirmative defense to be pleaded and proved by the defendant unless plaintiff's petition discloses on its face that he has been guilty of contributory negligence. As early as the case of *Union Pac. Ry. Co. v. Hand,* 7 Kan. 380, it was said:

"1. The first of these is that the petition is defective in this: that it does not state that the injury was occasioned without the fault of plaintiff. As the plaintiff does not have to prove this fact, it is not clear upon what ground it ought to be stated in the petition. If his negligence appears in the case as

contributing to the injury, then he cannot recover; but this is matter of defense." (p. 388.)

We shall not attempt to list the cases in which this court has adhered to the rule since 1871, but in the case of *French v. Heibert*, 175 Kan. 296, 262 P. 2d 831, the late Mr. Chief Justice Harvey said:

"It is argued that any injury plaintiff may have sustained was the result of her own negligence. Contributory negligence ordinarily is a defense. It is only when the petition states facts from which it is clear that the plaintiff was guilty of contributory negligence that this court is justified in sustaining a demurrer to the petition. We think this petition does not clearly show contributory negligence of the plaintiff. The arguments made on that point here would be more properly made to a jury." (p. 300.)

Appellant refers us to the case of *Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 300 P. 2d 387, and quotes therefrom. We note, however, that appellant has only quoted the first two sentences contained in a paragraph of the opinion. The complete paragraph reads as follows:

"One of the essential elements to the application of the doctrine of *res ipsa loquitur* is that the injury is caused without fault of the injured party. This is so inherent and fundamental that citation of authority is unnecessary. Do the allegations of the petition free plaintiff from a reasonable conclusion of fault? To restate the question, do the attending circumstances warrant a reasonable conclusion that something other than defendant's alleged negligence caused the injury? We think they do not. Hammond owned and operated the truck and it was under his authority and direction; it was parked with its motor stopped at his loading dock on his premises and he designated which tires plaintiff was to repair and check. The plaintiff did not move the truck from its parked position or in any manner affect the operation of its brakes or mechanical parts. Although he may have exercised some temporary control of the truck during the tire-repair operation, the general control and direction of it was in Hammond. When plaintiff's work was completed the temporary control he may have exercised terminated. No allegations of the petition reasonably infer that the plaintiff negligently jacked up the truck or negligently repaired or checked the tires. They are to the contrary: that he blocked the wheels so that the truck would remain stationary. When his work was completed and the blocks removed, the truck did not roll forward but remained in its parked position." (p. 164.)

The Lamb case contains careful definitions of the elements of the rules pertaining to the doctrine of *res ipsa loquitur*. The facts of the case were that plaintiff had been called to fix some tires on a heavy truck which had been parked at the curb by the defendant. After the tires were fixed and the plaintiff was standing with his back to the truck, it moved forward and crushed him. He sued defendant who had parked the truck and the majority of the court

held that his petition stated a cause of action on the theory of *res ipsa loquitur*.

The real question in the Lamb case was whether or not defendant had complete control of the truck at the time of the accident. The holding in the Lamb case is not helpful to the appellant in this case on that theory because certainly appellant here had a great deal more control of the washing machine than defendant had over the truck in the Lamb case. As to the matter of control, appellant cites the case of *Johnson v. Latimer*, 180 Kan. 720, 308 P. 2d 65. That case involved the escape of carbon monoxide gas from a furnace in plaintiff's own house. The majority of the court there held that the furnace was available to the plaintiff and under his control and he could, therefore, inspect the same and allege what defects existed therein. As a result of such a situation, it was held by the majority that the doctrine of *res ipsa loquitur* did not apply.

In the case at bar, the washing machine is shown to have been at all times in the place of business of the defendant and under his control except for the mere license granted to the appellee to use it to wash her clothes.

As to appellant's duty in such a situation, it is said in Restatement, Torts, § 408:

"One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for bodily harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it."

Attention is also directed to Comment a, under § 408.

We note that in other jurisdictions courts have considered the matter of the dangerous propensities of electric washing machines and the necessity of having the safety device on the wringer in working order. In *Shaefer v. Investors' Company*, 150 Or. 16, 41 P. 2d 440, 97 A. L. R. 213, we find a case where the tenant of an apartment house sued the landlord for injuries where it was alleged that he had failed to instruct her in the operation of the wringer. The court said:

"The gist of plaintiff's action is the failure of defendant to instruct her in the operation of the machine. The wringer in question is an electric power-driven machine. It compresses the water out of the wet clothes by means of two vulcanized rubber rollers, horizontally arranged so that they can be forced tightly against each other by means of thumb screws. It has a trigger-like safety device by means of which the rollers can be readily disengaged.

The wet clothes must be fed into it by being pressed against the rollers while they are in motion so that they will catch the clothes and draw them through. Of course, there is always danger of getting the fingers and hands caught, and in that case the safety device must be used at once. It is of no avail to stop the machine once the hand is caught except that the hand would not be drawn further in between the rollers, but it would be impossible to extract the hand, without further injury, except by releasing the pressure on the rollers by means of the safety device. The very fact that it is provided with such a safety device is evidence that it is a dangerous instrumentality." (p. 19.)

The Supreme Court of Pennsylvania also discussed the duty of a vendor to supply a purchaser with a machine having an efficient safety device on the wringer in the case of *Ebbert et al. v. Phila. Electric Co., Aplnt.*, 330 Pa. 257, 198 Atl. 323. The court said:

"A vendor 'demonstrating' an old-fashioned wringer would not need to be as skillful or as careful as a vendor 'demonstrating' to promote a sale, an electrically driven wringer. A 'demonstration' of a simple old-fashioned wringer was probably not necessary. Since there are many varieties of machines used for work *normally* not dangerous, and since many machines used for such work become dangerous when not constructed with care, each case must be decided on its own special facts, and verbal formulas which were useful in solving the legal problems in the era of the 'simple life' cannot now be judicially accorded their former importance. The public safety and security against the fatal or injurious consequences of negligence in demonstrating and testing mechanical devices for common public use and in which lurk obvious possibilities of danger is a consideration to which courts cannot be indifferent. An imperative social duty requires a vendor of a mechanical device to take at least such easily available precautions as are reasonably likely to prevent serious injury to those who by using such a device may be exposed to dangers arising from its defective construction." (p. 263.)

In both of the above cases, plaintiffs had sued to recover damages for injuries suffered when their fingers became caught in a wringer of an electric washing machine and the safety device failed to release the wringer. It seems to us that the allegations of appellee's amended petition do not show contributory negligence on her part. Therefore, the argument that such contributory negligence was the proximate cause of the accident needs no comment herein.

We have not considered the question whether or not plaintiff's petition might also contain a cause of action based upon specific negligence. If that were true, appellant's demurrer should have been overruled regardless of the question of whether a cause is stated based upon *res ipsa loquitur*. It has been held by this court that a single petition may contain claims upon allegations of specific negligence and upon the doctrine of *res ipsa loquitur*. (*Emrie v.*

*Tice,* 174 Kan. 739, 258 P. 2d 332; *Hoffman v. Hill,* 175 Kan. 826, 267 P. 2d 526.)

All other matters referred to in appellant's brief have been given careful attention, but have been found to require no further comment. The order of the district court in overruling appellant's demurrer to the amended petition should be and is hereby affirmed.

It is so ordered.